Debra S.W. (Ball) TIMMS, Plaintiff,

v.

Herbert S. ROSENBLUM, David Rosenblum, and Rosenblum & Rosenblum, a Virginia Professional Corporation, Defendants.

Civ. A. No. 88–1549–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 24, 1989.

Jack L. Wuerker, Golden, Freda & Schraub, P.C., McLean, Va., for plaintiff.

Francis J. Prior, Jr., Siciliano, Ellis, Dyer & Boccarosse, Fairfax, Va., for defendants.

MEMORANDUM OPINION

ELLIS, District Judge.

*Introduction*

This case presents novel questions concerning the construction of Virginia's nonsuit statute and the expansion of legal malpractice damages to include recovery for mental anguish. Plaintiff in this professional malpractice action alleges that the lawyer defendants were negligent and reckless in their representation of her in a child custody battle with the result that she lost custody of her two children. She contends it took her two years with new counsel and substantial legal fees and expenses to win back the custody of her children. In this action, she seeks recovery of these fees and expenses as well as punitive damages and damages for mental anguish.[1] Defendants moved to dismiss or, in the alternative, to strike the claims for punitive damages and mental anguish. The Court denied the motion with respect to punitive damages, but did so without prejudice to defendants to renew their attack on these damages by way of summary judgment or motion for a directed verdict. The motion pertaining to damages for mental anguish was taken under advisement pending review of supplemental briefs. The Court has now completed its review of these supplemental briefs and sets forth here its reasons for concluding that plaintiff's claim for such damages must be dismissed.

*Background*

In July 1984, plaintiff learned that the Georgia Department of Child Protection Services was investigating allegations filed in Virginia of sexual and physical abuse of her two young children. At the time plaintiff, then living in Georgia, and her former husband, then living in Virginia, shared custody of the children. Plaintiff had custody during the school year and the father had custody during the summer. Plaintiff feared that this investigation was a sign that her former husband was about to launch an effort to deprive her of custody. With this in mind, she consulted a lawyer in Georgia who, in turn, contacted the defendants in Virginia. Defendants agreed to represent plaintiff. Thereafter, according to plaintiff, defendants did little, if anything, right. Among other things, it is alleged that defendants misrepresented their experience in custody cases, failed to

---

1. Plaintiff's claim in full is for "mental anguish, pain, suffering and emotional distress." The extra terms add nothing of legal substance to the phrase "mental anguish." Accordingly, the latter phrase is used throughout to identify the claim in issue.

prevent entry of an *ex parte* emergency order depriving plaintiff of custody, failed to retain an expert after representing they would do so, failed to file a motion to transfer the case to Georgia, failed to secure witnesses for a hearing, failed to interview witnesses in advance of the hearing and induced or pressured plaintiff to sign a consent order by threatening her with permanent custody loss if she declined to do so. As a direct result of these failures and misrepresentations, plaintiff claims she lost custody of her children for two years and, at the time, faced the prospect of permanent loss of custody.

In November 1984, plaintiff discharged defendants, retained new counsel and then spent two years and nearly $100,000 to recover custody of her children. She succeeded. Thereafter, in August 1986, plaintiff brought a malpractice action against defendants in the Fairfax County Circuit Court. That action was essentially identical to the instant one. There, as here, defendants moved to strike the damage claim for mental anguish and emotional distress. On September 16, 1986, the parties, by counsel, argued the motion before Judge Middleton of the Fairfax Circuit Court who, on September 22, issued a letter

opinion granting the defendants' motion to strike the mental anguish claim.[2] The next day, plaintiff, faced with this bad news, suffered a voluntary nonsuit. Defendants did not object. This action followed in December, 1988, more than two years after this cause of action arose.

Given these facts, the following questions are presented:

(1) Was the nonsuit, pursuant to Va. Code § 8.01–380, valid as to the mental anguish claim given that this claim had been submitted for decision and Judge Middleton had issued a letter opinion striking the claim?

(2) Notwithstanding the nonsuit, is Judge Middleton's decision entitled to deference in this action as *res judicata* or law of the case?

(3) Is plaintiff's mental anguish claim a valid cause of action in Virginia given the allegations in this case?

*Analysis*

I. *The Nonsuit*

Analysis appropriately begins with the effect or validity of the nonsuit with respect to the mental anguish claim. Defendants argue that Virginia's nonsuit statute

---

**2.** Judge Middleton's letter opinion states as follows:

Dear Counsel:

This matter is before the Court on Defendants' Motion to Strike Plaintiff's Claim for Damages for pain, suffering, and mental anguish. The motion is granted.

Plaintiff's Motion for Judgment sets forth a cause of action in legal malpractice involving a child custody case, with a count in negligence and a count in breach of contract. Both counts pray for damages in the amount of at least $45,000 for expenses incurred as a result of the alleged malpractice and $250,000 for pain, suffering, and mental anguish.

In Virginia, a breach of contract claim cannot give rise to damages for psyche-related injury unless such damages are recoverable as damages resulting from an independent tort. *See Sea–Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982). The nature of a malpractice action is a breach of contract claim resulting from negligence—negligence that could stand as an independent tort. Therefore, as to both counts in Plaintiff's Motion for Judgment, the Court need examine whether the damages for mental anguish and the like are recoverable in a negligence action.

As to a negligence claim, the law is well-settled in Virginia that, absent intentional or reckless conduct, a plaintiff cannot recover damages for mental anguish, unless the mental anguish was consequential from and contemporaneous to some physical injury. *See Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145 (1974); *Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214 (1973). Plaintiff cites [*Sanford v. Ware*] 191 Va. 43, 60 S.E.2d 10 (1950) in which it is stated that a recovery for emotional injury can be had when the mental anguish is accompanied by physical or *pecuniary* damage. *Id.,* 191 Va. at 49, 60 S.E.2d 10. [emphasis added]. In light of the lack of reference to *Sanford* or pecuniary damage in *Womack, Hughes,* or any other Virginia case related to the issue at hand, the Court must view *Sanford* (and its reference to pecuniary damage) as an anomaly and not an accurate statement of the law in Virginia.

Because the Motion for Judgment does not set forth facts establishing an allegation of physical injury or any wanton, willful, or reckless intent, the prayer for damages resulting from psyche-related injury must be stricken.

S/Thomas J. Middleton

precluded a nonsuit as to the mental anguish claim because that claim had already been submitted to the state trial judge. This argument, if accepted, would lead to dismissal of the mental anguish claim as barred by the statute of limitations. More than two years elapsed between the accrual of the cause of action and the filing of this federal suit. Only the tolling provision of the nonsuit statute makes the mental anguish claim (as well as the other claims) timely in this Court. If the nonsuit were invalid or ineffective as to the mental anguish claim, then the statute's tolling provision would not apply and the claim would be time-barred. The nonsuit validity question is therefore potentially dispositive. Its answer requires construction of Virginia's nonsuit statute, the pertinent portions of which are as follows:

> A party shall not be allowed to suffer a nonsuit as to any cause of action or claim, or any other party to the proceeding, unless he does so [1] before a motion to strike the evidence has been sustained or [2] before the jury retires from the bar or [3] before the action has been submitted to the court for decision.

Va.Code § 8.01–380(A). In essence, the statute prohibits a nonsuit in three circumstances.[3] The first two—after a "motion to strike the evidence" has been sustained or after "the jury has retired from the bar"—have nothing to do with the circumstances at bar, namely a decision dispositive of only one of several claims in suit.[4] But the answer is not so clear with respect to the third circumstance in which a nonsuit is statutorily precluded. A motion dispositive of one of the several claims in suit was plainly "submitted to the court for decision." The question presented, however, is whether the prohibition barring a nonsuit after an "action" has been submitted for decision applies only where the entire action is submitted, as occurs at the conclusion of the evidence in a bench trial, or also when some, but fewer than all, the claims in suit are submitted for decision, as may occur in pretrial motions to dismiss or for summary judgment.

There is no clear answer to this novel question.[5] The term "action" is not wholly free from ambiguity. The Virginia Code definition of "action" [6] and the nonsuit statute's structure [7] suggest, but do not com-

---

**3.** There also exists a judicially created nonsuit limitation not relevant here that bans a nonsuit if a party is thereby deprived of a right or a defense. *See Kemper v. Calhoun,* 111 Va. 428, 69 S.E. 358 (1910); *City of Norfolk v. County of Norfolk,* 194 Va. 716, 75 S.E.2d 66 (1953).

**4.** The "motion to strike the evidence" referred to in the nonsuit statute is different from the motion to strike the mental anguish claim granted by the state trial court in this case. The latter is a threshold motion analogous to a federal Rule 12(b)(6) motion. The former, a motion to strike the evidence, is a motion made by a party at the close of an opponent's case in a jury trial. It is the state law analog of a motion for a directed verdict pursuant to Rule 50, Fed.R.Civ.P.

**5.** No legislative history concerning the nonsuit statute sheds any light on this question. So far as the legislative record discloses, this question has never been considered or examined by the General Assembly.

**6.** Va.Code § 8.01–2(1) provides that the term action "shall include all civil proceedings whether at law, in equity or statutory in nature and whether in circuit courts or district courts." *Black's* definition is essentially similar:

> An ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the re-

dress or prevention of a wrong, or the punishment of a public offense.

*Black's Law Dictionary* 49 (4th ed. 1951).

**7.** Two points are pertinent in this respect. First, the statute's introductory clause states that a party shall not be allowed to suffer a nonsuit as to "any cause of action or claim." This usage suggests the drafters believed there was a distinction between "action" and "claim," with the latter being a part and the former the whole. Second, two of the circumstances in which the statute precludes a nonsuit—a motion to strike the evidence and the retirement of the jury—occur only at the trial stage, not the pretrial stage. This invites the inference that the third circumstance was also intended to apply to the trial stage and not the pretrial stage. So viewed, the third circumstance would refer to the submission of the entire action to the court, or what remains of it, at the conclusion of a bench trial. One Virginia circuit court reached this conclusion. *See Rasnick v. Pittston Co.,* 5 Va.Cir. 336, 346–41 (1986). More recently, however, the Virginia Supreme Court has implicitly rejected the inference that this nonsuit preclusion provision applies only at trial. *See Khanna v. Dominion Bank, N.A.,* 237 Va. ——, 377 S.E.2d 378 (1989) (nonsuit at summary judgment stage disallowed because trial court had already decided the claim).

pel, the conclusion that "action" refers to the entire cause, i.e., all the claims, and not just some of them. Decisions from other jurisdictions support this construction of the term "action."[8] Noteworthy among these decisions is *Smith, Kline and French Laboratories v. A.H. Robins Co.*, 61 F.R.D. 24 (E.D.Pa.1973). There, a district court held that a party desiring to delete some but not all claims against several defendants could properly proceed under Rule 15, Fed.R.Civ.P., relating to amendment of pleadings rather than under Rule 41, Fed.R.Civ.P., relating to dismissal of "actions." In reaching this conclusion, the court distinguished between a "claim" or "claim for relief" and "action." The latter term, the court noted, "is the sum total of the claims which the parties assert against each other." *Id.* at 28–29. Given this construction of "action," the nonsuit statute would not preclude a party from suffering a nonsuit when fewer than all the claims are submitted for decision.[9]

But the possible consequences of this conclusion provide a compelling argument for the opposite conclusion. Permitting an entire case to be nonsuited after some, but not all, the claims in the action have been submitted for decision, or even decided, could result in a waste of public and private resources. In a complex multi-claim suit, for example, a motion for partial summary judgment covering all but one of the claims might be filed. Thereafter, the court and parties would presumably expend substantial time and effort to resolve the issues. Even so, and even after these claims are submitted and the court issues its decision, the entire matter could be nonsuited. Plaintiff would then be entitled to reinstate the action, including the claims already submitted or decided in the same court as the first, unless that court lacks jurisdiction or is an improper venue. The new action, including the already submitted or decided claims, could also be brought in a federal court, · presumably in any state and district where venue and jurisdiction are proper, or in any other court if there is "good cause" for proceeding there. In other words, having essentially lost all claims but one in pretrial motions in a Virginia trial court, a litigant can try again either in that court, in a federal court, or elsewhere "for good cause." There is simply no good policy reason to allow this. In effect, it gives a litigant another chance at bat on the submitted claims after he has struck out—more than his allotted day in court. Nor, for the reasons stated in the following section, can *res judicata* or the law of the case doctrines be consistently relied on to prevent or ameliorate these untoward results. In sum, adverse, even absurd consequences may flow from construing the nonsuit statute to permit nonsuits even where some, but not all, claims in an action are submitted to the court for decision. This prospect does not, by itself, mandate a contrary construction, but it does mitigate in favor of it.

This issue at bar has never been squarely presented to the Supreme Court of Virginia. Three recent decisions construe the portion of the nonsuit statute pertinent here, but none involved the submission to the trial court of some, but not all, of the claims asserted in the action. In all three the entire action, or what then remained of the action, had been submitted for decision.[10] And in all three the Supreme Court

---

**8.** *See, e.g., Bradshaw v. Probate Court of Marion County*, 225 Ind. 268, 73 N.E.2d 769, 771 (1947); *Winkelman v. General Motors Corp.*, 48 F.Supp. 490, 494 (S.D.N.Y.1942); *Pathman Constr. Co. v. Knox County Hosp. Ass'n*, 164 Ind.App. 121, 326 N.E.2d 844, 853 (1975).

**9.** Judge Middleton and the parties apparently agreed with this conclusion as the endorsed order stated that the action was "dismissed without prejudice to their bringing of another action concerning any of the matters involved therein." But Judge Middleton was not presented with the question of the effect of his letter opinion on plaintiff's right to suffer a nonsuit. In any event, defendants' consent to the order is not material; the parties could not, by consent, allow a nonsuit if the statute prohibited it. Further, the parties have not pressed here any argument based on defendants' consent to the nonsuit.

**10.** In *Khanna v. Dominion Bank, N.A.*, 237 Va. ——, 377 S.E.2d 378 (1989), the defendant sought to take a nonsuit after receiving notice from the trial judge's chambers that the judge had decided to grant plaintiff's motion for summary judgment on defendant's counterclaim.

was not asked to grapple with the vexing question presented here. Hence, none of these three recent decisions is dispositive here.

This analysis establishes that the nonsuit issue presented is novel and that substantial considerations exist on both sides of the question. Ultimately, this Court need not decide this question because it concludes, with the Virginia trial court, that the claim for mental anguish must be dismissed on the merits. Yet this discussion is nonetheless useful if it serves to focus attention on an area of the nonsuit statute that may require legislative repair.

## II. *Res Judicata and Law of the Case*

■ Even assuming, as the Court does, that the nonsuit in the state court was effective as to the mental anguish claim, defendants argue that the doctrines of law of the case or *res judicata* nonetheless compel this Court to follow the state trial court's decision on this issue. This argument fails. *Res judicata* requires a final judgment and, in Virginia, final judgments must be expressed through an order. *See In re Cawthorn*, 1 B.R. 267, 271 (Bankr.W. D.Va.1979) (no *res judicata* effect attaches to a decision announced from the bench of Virginia circuit court but not embodied in

an order); *see also Walker v. Commonwealth*, 225 Va. 5, 301 S.E.2d 28 (1983) (courts speak only through orders entered on the record); *Cunningham v. Smith*, 205 Va. 205, 135 S.E.2d 770 (1964) (same). Judge Middleton's letter-opinion is neither an order, nor a final judgment. *See Daniels v. Truck & Equip. Corp.*, 205 Va. 579, 139 S.E.2d 31 (1964) (a final order disposes of the entire case). *Res judicata*, therefore, has no application here.

■ The law of the case doctrine is similarly inapplicable. Based on fairness and judicial economy, this doctrine holds that "where a court has enunciated a rule of law to be applied in a case at bar, it establishes the law which will normally apply to the same issues in subsequent proceedings in that case." *Wilson v. Volkswagen of America, Inc.*, 445 F.Supp. 1368, 1370 (E.D.Va.1978) [quoting *Petersen v. Federated Dev. Co.*, 416 F.Supp. 466, 473 (S.D.N.Y.1976) ].[11] But, as it is settled in Virginia that courts speak only through orders,[12] there is no occasion for the doctrine to operate here where no order was entered. Had Judge Middleton entered an order dismissing the claim, state and federal courts in any reinstituted suit would apply the

The counterclaim was all that then remained of the action, as summary judgment on the complaint had been entered earlier. The trial court denied defendant's request. The Supreme Court of Virginia affirmed the denial of the nonsuit, noting that "it would be absurd to hold that a claimant could suffer a nonsuit as a matter of right after a court had decided the claim." *Id.,* 377 S.E.2d at 380. Here, too, it seems absurd to permit a nonsuit when the court has decided the claim. But the issue in *Khanna,* unlike here, was one of the timing of the requested nonsuit: Since the entire matter had already been decided by the trial court, the request for nonsuit came too late. Thus, the *Khanna* court did not focus on the issue presented here, namely whether the statute precludes a nonsuit when only part of an action has been submitted to the court.

*City of Hopewell v. Cogar, et al.,* 237 Va. ——, 377 S.E.2d 385 (1989) also raised a timing question. There the court held that nonsuit was valid when suffered within a 15 day period allowed by the trial court for submission of memoranda concerning a summary judgment motion covering the entire action. *See also Bivens v. Hyatt,* 1 Va.Cir. 447 (1969).

Timing, and not the issue at bar, was also the focus in *Wells v. Lorcom House Condominiums' Council of Owners,* 237 Va. ——, 377 S.E.2d 381 (1989). The court there ruled that a nonsuit motion came too late, because the entire matter had already been argued and submitted to the trial court on a demurrer, a plea in bar and a motion to dismiss, any one of which was potentially dispositive of the entire case.

**11.** The doctrine is not an absolute bar to relitigating the same issues; reconsideration of the issues is appropriate if "a party to the action raises serious objections to the soundness of the first decision...." *Wilson,* 445 F.Supp. at 1370 [quoting *Wm. G. Roe & Co. v. Armour & Co.,* 414 F.2d 862, 868 (5th Cir.1969) ]; *see also Capital Investors v. Executors of Morrison,* 584 F.2d 652 (4th Cir.1978).

**12.** The rationale for this rule is arguably questionable in cases where a trial court writes a detailed opinion and notes that an order will issue. Nonetheless, no reported Virginia decision recognizes such an exception to the rule.

954

doctrine and pay appropriate deference to the ruling.[13] Under these circumstances, the law of the case doctrine would provide some mitigation of the untoward results of permitting nonsuits when a trial court disposes one some, but not all, of the claims at bar.

## III. *The Mental Anguish Claim*

■ Absent an allegation and proof of outrageous conduct there is no warrant in Virginia law for allowing recovery of mental anguish damages in legal malpractice cases.[14] The Supreme Court has never permitted it.[15] Nor is there any persuasive argument that Virginia law, as it has developed, would sanction such an extension. Indeed, the contrary appears. Legal malpractice claims in Virginia sound either in contract or in tort. *See Oleyar v. Kerr,* 217 Va. 88, 225 S.E.2d 398 (1976); *cf. MacLellan v. Throckmorton,* 235 Va. 341, 367 S.E.2d 720 (1988). Plaintiff here has alleged negligence and breach of contract claims. Virginia law permits no recovery for mental anguish in breach of contract claims absent alleged conduct rising to the level of a separate and independent tort. *See Sea–Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647, 653 (1982). Thus, to the extent plaintiff's action here sounds in contract, it is plain that no mental an-

guish damages are recoverable. The same result obtains if the action is deemed to sound in tort or where, as here, plaintiff explicitly asserts a tort. Virginia is heir to the general English common law rule precluding recovery of mental anguish damages absent a physical injury. *See id.; Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214 (1973); *Bowles v. May,* 159 Va. 419, 166 S.E. 550 (1932); *Awtrey v. Norfolk & W.R. Co.,* 121 Va. 284, 93 S.E. 570 (1917). Although the Supreme Court of Virginia has expanded the availability of these damages beyond the narrow confines of the original rule, it has done so with great caution and only in carefully circumscribed circumstances. *See Sea–Land Service, Inc.,* 224 Va. at 354, 297 S.E.2d at 653; *Naccash v. Burger,* 223 Va. 406, 290 S.E.2d 825, 831 (1982); *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145 (1974); *Hughes,* 214 Va. at 27, 197 S.E.2d at 219. Thus, the current state of Virginia law permits recovery for mental anguish only

(1) where the mental anguish results directly from tortiously caused physical injury[16] or, in more limited circumstances, where the emotional distress results in or is manifested by physical injury;[17]

(2) where the wrongdoer's conduct was intentional or reckless, extreme and outrageous, and caused plaintiff to suffer

---

**13.** It seems a different result understandably obtained in the pre-*Erie—Swift v. Tyson* era. *See Steinman v. Clinchfield Coal Corp.,* 121 Va. 611, 93 S.E. 684 (1917) (federal court decision not given law of the case treatment in subsequent Virginia state court trial).

**14.** Other jurisdictions have similarly limited the award of mental anguish damages in legal malpractice actions to egregious or extraordinary circumstances. *See, e.g., Lawson v. Nugent,* 702 F.Supp. 91, 93–94 (D.N.J.1988) (upholding the award of emotional distress damages to convicted defendant in malpractice suit against former defense attorney where attorney's negligence resulted in defendant's extended incarceration); *see generally* Bauman, "Damages for Legal Malpractice: An Appraisal of the Crumbling Dike and the Threatening Flood," 61 Temple L.Rev. 1127, 1163–68 (1988) (and cases cited therein).

**15.** In *Stewart v. Hall,* 770 F.2d 1267 (4th Cir. 1985), a legal malpractice action similar to the case at bar, the trial court, apparently without

objection, allowed an instruction on mental anguish. Defendant appealed an adverse verdict on proximate cause grounds. The propriety of mental anguish damages was not appealed. The Fourth Circuit did not address the propriety of allowing mental anguish damages in legal malpractice case. Rather, it focused on proximate causation, holding that "in making the determination that an attorney's negligence proximately caused a client's damages, the trier of the malpractice action must find that the result in the underlying action would have been different but for the attorney's negligent performance." *Id.* at 1269.

**16.** *See Norfolk & W.R. Co. v. Marpole,* 97 Va. 594, 34 S.E. 462 (1899).

**17.** *See Wise v. GMC,* 588 F.Supp. 1207 (W.D.Va. 1984); *Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214 (1973); *Moore v. Jefferson Hosp., Inc.,* 208 Va. 438, 158 S.E.2d 124 (1967); *Johnson v. McKee Baking Co.,* 398 F.Supp. 201 (W.D.Va. 1975), *aff'd,* 532 F.2d 750 (4th Cir.1976).

severe emotional distress.[18]

(3) in certain other limited factual circumstances, not relevant here.[19]

This case fits none of these categories. Plaintiff here has suffered no physical injury, nor has she alleged or shown that defendants' conduct was intentional, extreme, outrageous or reckless.[20] It is equally plain that this case is not one of those special circumstances previously acknowledged by the Supreme Court of Virginia to warrant the award of mental anguish damages. Plaintiff's heavy reliance on the *Naccash* and *Bulala* decisions is misplaced. These decisions are *sui generis* and this Court finds no warrant in Virginia law for extending the holdings of those decisions beyond the specific egregious facts there presented.

The wisdom of precluding mental anguish damages in this case is confirmed by considering the consequences of a contrary ruling. To permit recovery for mental anguish in this case would necessarily extend recovery for mental anguish to all malpractice cases. There is no reason or principle that distinguishes child custody cases from any other professional malpractice cases. The simple truth is that mental anguish attends all litigation. Any lawyer who has practiced for any substantial time in virtually any area of law will immediately confirm that parties in all of these areas make substantial emotional investments in their causes and suffer mental anguish in the event of an adverse result. This is manifestly so in areas of civil litigation involving claims of employment discrimination, wrongful discharge, civil rights violations, handicapped rights violations, labor disputes, worker's compensation and indeed even patent, copyright and corporate disputes. Mental anguish is not restricted to parties to child custody disputes; it is experienced by parties to any lawsuit to the extent they are emotionally involved in the subject of the lawsuit. In short, allowing recovery for mental anguish in this case is to allow it in all professional malpractice cases. This is a step, or more appropriately, a leap that the Supreme Court of Virginia has not yet seen fit to take. And this is no wonder given the ramifications of such a leap. No better expression of this point exists than that of the Virginia Supreme Court in an early case limiting recovery for mental anguish. That Court stated:

> The difficulty in such cases is the character of the damages claimed. The injuries in such cases are too hard to determine with any reasonable certainty, are more often assumed than real, and the suit too liable to be wholly speculative. *If every one was allowed damages for injuries to his feelings caused by some one else, the chief business of mankind might be fighting each other in the courts. Damages for mental suffering open into a field without boundaries, and*

---

**18.** *See Gaiters v. Lynn,* 831 F.2d 51 (4th Cir. 1987); *Swentek v. USAIR, Inc.,* 830 F.2d 552 (4th Cir.1987); *Penn. Life Ins. Co. v. Bumbrey,* 665 F.Supp. 1190 (E.D.Va.1987); *Woodring v. Bd. of Grand Trustees,* 633 F.Supp. 583 (W.D.Va.1986); *Welch v. Kennedy Piggly Wiggly Stores, Inc.,* 63 B.R. 888, 895–96 (W.D.Va.1986); *Wise v. GMC,* 588 F.Supp. 1207 (W.D.Va.1984); *Moore v. Allied Chem. Corp.,* 480 F.Supp. 364 (E.D.Va.1979); *Womack v. Eldridge,* 215 Va. 338, 342, 210 S.E. 2d 145, 148 (1974).

**19.** *See Naccash v. Burger,* 223 Va. 406, 290 S.E. 2d 825 (1982) (medical malpractice suit in which parents of a fatally-diseased infant recovered mental anguish damages from a negligent physician for the child's "wrongful birth"); *see also Boyd v. Bulala,* 647 F.Supp. 781, 792 (W.D. Va.1986), *reconsideration den.,* 672 F.Supp. 915 (W.D.Va.1987) (district court, relying on *Naccash,* upheld the jury award of emotional distress damages to a father whose infant daughter

suffered severe physical and mental handicaps as a direct result of defendant physician's outrageous conduct during the child's birth).

**20.** While dismissing the mental anguish claim, the Court permitted plaintiff to present all her evidence on punitive damages. But at the conclusion of plaintiff's direct case, the Court granted defendants' Rule 50 motion for a directed verdict on punitive damages. Plaintiff wholly failed to present evidence of willful, wanton, reckless or outrageous conduct sufficient to warrant submitting the issue of punitive damages to the jury. *See Booth v. Robertson,* 236 Va. 269, 374 S.E.2d 1, 2 (1988); *Wallen v. Allen,* 231 Va. 289, 343 S.E.2d 73, 78 (1986); *see generally* Comment, "Punitive Damages in Professional Malpractice Cases," 61 Temple L.Rev. 1431, 1442–59 (1985) (analyzing the standards for awarding punitive damages in malpractice cases).

*there is no principle by which the court can limit the amount of damages.* Mere logic will not dispose of a question of this character. The court must keep one eye on the theoretical, and the other on the practical.

*Bowles v. May*, 159 Va. 419, 166 S.E. 550, 555 (1932) [quoting *Connelly v. Western Union Telegraph Co.*, 100 Va. 51, 40 S.E. 618, 621 (1902), which, in turn, quoted *Francis v. Western Union Telegraph Co.*, 58 Minn. 252, 59 N.W. 1078 (1894) ]. (emphasis added).

The *Bowles* decision is admittedly old, but its wisdom is ageless.[21] Absent compelling reasons, courts and legislatures should be especially reluctant to create new incentives for litigation. No thoughtful person wants "fighting each other in the courts" to be the chief business of society.

### Conclusion

The Court concludes that plaintiff's claim for mental anguish should be dismissed for failure to state a claim under Virginia law. Given this ruling, the Court does not resolve the nonsuit issue presented here. Still, the discussion of that issue may be useful if it serves to illuminate an area that would profit from legislative attention.

An appropriate order has issued.

---

**21.** More recently, this theme was echoed by the New Jersey Superior Court when it limited the award of mental anguish damages in legal malpractice cases only to egregious or extraordinary circumstances. *See Gautam v. DeLuca*, 215 N.J.Super. 388, 521 A.2d 1343 (1987). In that case, the court remarked,

As a practical matter, there must be some convenient clamp or restriction placed upon a tortfeasor's otherwise boundless liability. The courts cannot serve as the answer for all of life's shortcomings and disappointments. Aggravation, annoyance and frustration, however real and justified, constitute unfortunate products of daily living.

*Id.* at 400; 521 A.2d at 1349.